UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EMILEE BRADLEY,     Plaintiff,

and

SHAWNA BROYLES,     Intervenor Plaintiff,

v.     Civil Action No. 3:23-cv-133-DJH-RSE

BSL EXPRESS TRUCKING, INC. and
FATKHUDDIN KURBONOV,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Emilee Bradley sued Defendants BSL Express Trucking, Inc. and Fatkhuddin Kurbonov in Jefferson Circuit Court, alleging various claims arising from an automobile accident involving Bradley and Kurbonov. (Docket No. 1-2) After Defendants removed the case to this Court (D.N. 1), the Court granted Intervenor Plaintiff Shawna Broyles's motion to intervene. (D.N. 42) Now, Defendants move for summary judgment (D.N. 66), and Plaintiffs oppose the motion. (D.N. 82) Defendants also move to exclude the opinion of Broyles's proffered expert, Dr. Jules Barefoot (D.N. 77), and Broyles opposes the motion. (D.N. 81) After careful consideration, the Court will deny Defendants' motion for summary judgment and grant Defendants' motion to exclude for the reasons set out below.

**I.    BACKGROUND**

On August 26, 2022, shortly after midnight, Bradley was driving northbound on Poplar Level Road in Louisville, Kentucky, with Broyles as a passenger. (*See* D.N. 66-7, PageID.396–99) Kurbonov was also on Poplar Level Road, traveling southbound in a tractor-trailer en route to make a delivery for BSL Express Trucking. (D.N. 69-1, PageID.417, 454–55; *see also* D.N. 66-

1

6, PageID.394–95; D.N. 66-7, PageID.396–98) Kurbonov had been on duty for more than thirteen hours (D.N. 69-1, PageID.445–50; D.N. 82-1, PageID.1164–67) and was on a telephone call. (D.N. 69-1, PageID.484–85) As Bradley approached the intersection of Poplar Level Road and Produce Lane, Kurbonov pulled up to the traffic light at the intersection. (*See* D.N. 66-6, PageID.394–95; D.N. 66-7, PageID.396–99; *see also* D.N. 67) Kurbonov intended to make a left-hand turn onto Produce Lane; because the traffic light was red when he approached the intersection, he stopped the tractor-trailer in the left-turn lane. (*See* D.N. 67; *see also* D.N. 69-1, PageID.440; D.N. 82-4, PageID.1279–80; D.N. 82-7, PageID.1292–95)

The parties dispute what happened next. According to Kurbonov, the traffic light displayed a green arrow indicating that he had the right of way to make a left turn. (D.N. 66-2, PageID.358–60) Defendants also point to two expert opinions that indicate that the traffic light displayed a green arrow immediately before Kurbonov attempted to turn onto Produce Lane. (D.N. 66-1, PageID.339–43) First, Defendants rely on Daniel W. Vomhof, an accident reconstructionist, for the proposition that Kurbonov's "truck began its turn and entered the intersection on a green arrow." (*See id.*, PageID.340 (quoting D.N. 57, PageID.241)) Defendants also note that their second retained accident reconstructionist, Van Kirk, has opined that "[n]o physical evidence supports a statement that Ms. Bradley had a green traffic signal at the time of the collision." (*Id.*, PageID.343 (quoting D.N. 57-2, PageID.295)) In contrast, Bradley maintains that she had the green light as she drove through the intersection and that she never saw a yellow or red light. (D.N. 70-1, PageID.786) Although Broyles admittedly does not remember the accident, Broyles testified during her deposition that Bradley has consistently represented that she had a green light, and that Broyles believes her. (D.N. 71-1, PageID.912–13, 917)

2

In any event, the two vehicles collided when Kurbonov attempted to make a left turn onto Produce Lane as Bradley was driving through the intersection. (D.N. 66-7, PageID.397; *see* D.N. 67) Kurbonov's tractor-trailer was equipped with a dash camera that recorded the moments leading up to the accident. (*See* D.N. 67) The video shows that Kurbonov had a green light immediately before he turned left but does not clearly indicate whether Kurbonov had a green arrow. (*Id.*; *see also* D.N. 71-1, PageID.891; D.N. 70-1, PageID.787; D.N. 69-1, PageID.497–98; D.N. 82-3, PageID.1265–66) Louisville Metro Police Officer Bryan Taylor responded to the accident and generated an accident report. (D.N. 82-3, PageID.1263–70; D.N. 66-7, PageID.396–400) After speaking to a witness on the scene, Taylor determined that Bradley had the right of way and that Kurbonov was responsible for the accident. (D.N. 66-7, PageID.396–400; *see also* D.N. 82-3, PageID.1263–70) At his deposition, Taylor reviewed the dash-camera footage; noted that he could not tell whether Kurbonov had a green arrow; and reiterated that he believes Kurbonov was responsible for the accident based on his investigation. (D.N. 82-3, PageID.1263–70)

Bradley sued BSL Express Trucking and Kurbonov in Jefferson Circuit Court, asserting state-law claims of negligence, gross negligence, negligence per se, and negligent hiring, training, retention, and supervision arising from the accident. (D.N. 1-2, PageID.10–13 ¶¶ 20–36) After Defendants removed the case to this Court (D.N. 1), the Court granted Broyles's motion to intervene. (D.N. 42) Broyles also asserts claims of negligence, negligence per se, and negligent hiring, training, retention, and supervision under Kentucky law. (D.N. 43, PageID.182–84 ¶¶ 6–17) Upon Broyles's intervention, Defendants filed an amended answer asserting an

indemnification counterclaim against Bradley as to Broyles's injuries.[1]  (D.N. 44, PageID.198–99 ¶¶ 16–17)

Now, Defendants move for summary judgment (D.N. 66), arguing that Plaintiffs have not provided sufficient evidence of Kurbonov's negligence to survive summary judgment.  (D.N. 66-1, PageID.351–54)  According to Defendants, "the dash camera video and Defendants' expert reports . . . directly contradict Bradley's deposition testimony" and "no reasonable jury could believe [Plaintiffs'] testimony in the face of this proof."  (*Id.*, PageID.353)  Plaintiffs oppose Defendants' motion and contend that several factual disputes remain that must be resolved by a jury.  (D.N. 82, PageID.1157–62)  Plaintiffs note that "Plaintiffs and Defendant Kurbonov have contradictory accounts of what occurred leading up to and during the collision" and that "[t]he police report and witness testimony on scene are contradictory to Defendant Kurbonov's account." (*Id.*, PageID.1161)  Plaintiffs also stress that "[t]he dash cam video is unclear and non-discernable."  (*Id.* (emphasis removed))

Defendants also move to exclude Broyles's proffered expert, Dr. Jules Barefoot, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  (D.N. 77)  Defendants assert that Barefoot's expert report "is devoid of any meaningful analysis or reasoning" and therefore would not aid the jury with its deliberation of any issues in the case.  (D.N. 77-1, PageID.1095)  Additionally, Defendants argue that Barefoot is not qualified to opine regarding Broyles's dental injuries, scarring, or alleged concussion.  (*Id.*, PageID.1099) In response, Broyles contends that Barefoot's expert opinion will aid the jury in assessing damages

---

[1] Defendants also asserted negligence counterclaims against Bradley.  (D.N. 44, PageID.197–98 ¶¶ 10–15)  The Court dismissed those counterclaims on March 7, 2025.  (D.N. 86)

4

and is admissible under the Federal Rules of Evidence. (D.N. 81) The Court considers the parties' arguments below.

## II.   ANALYSIS

### A.   Motion to Exclude

Defendants argue that the Court should exclude Broyles's proffered medical expert, Dr. Jules Barefoot, under Federal Rule of Evidence 702.[2] (*See generally* D.N. 77) Barefoot is a medical doctor certified in emergency and preventative medicine. (*See* D.N. 61, PageID.324–26) In addition, Barefoot is a certified independent medical examiner and has extensive experience evaluating injuries in the litigation context. (*Id.*, PageID.324–29) Broyles intends to introduce Barefoot to testify that she suffered injuries from the accident and that "all of the medical care and medical bills [she] incurred . . . were reasonable, necessary, and appropriate for the injuries sustained." (*Id.*, PageID.317) Barefoot's expert report first outlines the records reviewed by Barefoot, including LMPD reports and documents from various doctors visited by Broyles in the weeks following the accident. (*Id.*, PageID.320–21) Then, Barefoot's report contains a discussion section that states the following:

> Shawna Broyles was involved in a motor vehicle accident on August 26, 2022. She sustained facial lacerations, [as] well as a fracture to her maxillary bone on the right that resulted in dental trauma for which she has received treatment through the U of L [d]entist.
>
> Additionally[,] because of musculoskeletal complaints due to the motor vehicle accident, she underwent chiropractic treatment.

---

[2] In reply, Defendants also contend that Barefoot's expert report fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B). (*See generally* D.N. 84) But Defendants did not raise Rule 26 in their motion to exclude. (*See generally* D.N. 77) Accordingly, the Court need not address this issue. *See Gonzalez v. United States*, No. 1:22-CV-00091-GNS, 2023 WL 6051458, at *2 (W.D. Ky. Sept. 15, 2023) ("An argument raised for the first time in a reply brief is considered waived.") (quotation omitted).

5

> From review of the medical records, it appears that all treatment thus far has been both reasonable and appropriate.
>
> Not having evaluated Shawna, it appears that she did sustain[] significant dental trauma. I am not certain of further dental treatment she may have received due to the traumatic teeth injuries that occurred during the motor vehicle accident.
>
> Additionally, the record notes she had facial lacerations. Not having evaluated her, I am not certain of the extent of scarring[,] if any, which may have occurred.
>
> Finally, all of these opinions that were expressed within this report are within a reasonable degree of medical probability.

(*Id.*, PageID.321–22) Defendants argue that Barefoot's testimony will not aid the jury because it "offers no more than a historical recitation of Broyles'[s] medical treatment, and to the extent [it] offers conclusions, [it] does so in cursory fashion." (D.N. 77-1, PageID.1097) In addition, Defendants contend that Barefoot is not qualified to opine on Broyles's "dental injuries, concussions, or scarring." (*Id.*, PageID.1099)

As gatekeeper for the admission of expert-witness testimony, the Court must ensure that expert testimony is both reliable and relevant. *Daubert*, 509 U.S. at 597; *see also Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002). Federal Rule of Evidence 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The party offering an expert "bears the burden of showing by a preponderance of the evidence that the expert satisfies Rule 702." *In re Onglyza*, 93 F.4th 339, 345 (6th Cir. 2024). "[T]he test of reliability is 'flexible,' and 'the law grants district courts . . . broad latitude" in determining reliability. *United States v. Bauer*, 82 F.4th 522, 534 (6th Cir. 2023) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999)). In *Daubert*, the Supreme Court identified a list of factors that may assist courts in making a reliability determination. *Daubert*, 509 U.S. at 592–94. These factors include "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *Elliot v. Humana Inc.*, No. 3:22-CV-00329-RGJ, 2025 WL 953009, at *3 (W.D. Ky. Mar. 28, 2025) (quoting *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)). The *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001). In any event, an expert's opinion "must be supported by more than subjective belief" and speculation. *Endless River Techs., LLC v. TransUnion, LLC*, No. 23-3087, 2025 WL 233659, at *7 (6th Cir. Jan. 17, 2025).

The Court agrees with Defendants that Barefoot's proposed testimony must be excluded. Because Barefoot's report does not outline his reasoning or methodology, the Court is left to speculate as to whether Barefoot's opinion "is the product of reliable principles and methods" or whether he has reliably applied those "principles and methods to the facts of the case." *See* Fed. R. Evid. 702. Indeed, Barefoot provides *no* explanation for his conclusion that Broyles's medical treatment was appropriate. (*See* D.N. 61, PageID.321–22) As a result, Barefoot's opinion as outlined in his report satisfies none of the *Daubert* factors. *See Elliot*, 2025 WL 953009, at *3 (listing "testing, peer review, publication, error rates, the existence and maintenance of standards

controlling the technique's operation, and general acceptance in the relevant scientific community"). And although the *Daubert* factors are flexible and not necessarily determinative in every case, *Barreto*, 268 F.3d at 335, Barefoot's failure to articulate his reasoning makes it impossible for the Court to verify whether his opinion is supported "by more than subjective belief" and speculation. *See Endless River Techs.*, 2025 WL 233659, at *7. Thus, Broyles has not met her burden under Federal Rule of Evidence 702 to demonstrate that Barefoot's testimony is reliable. *See In re Onglyza*, 93 F.4th at 345; *see also* Fed. R. Evid. 702.

The Court is also not convinced that Barefoot's testimony would aid the jury. "Information presented without any expert analysis or other application of the expert's expertise generally should come to the jury directly from the sources rather than through the mouth of the expert." *Chapman v. Gen. Motors LLC*, No. 219CV12333TGBDRG, 2023 WL 2745161, at *6 (E.D. Mich. Mar. 31, 2023) (internal quotation omitted); *see also Burton v. Ethicon Inc.*, No. CV 5:20-280-DCR, 2020 WL 5809992, at *5 (E.D. Ky. Sept. 29, 2020) (quotation omitted). On the other hand, "expert testimony that relies on expert knowledge and experience to contextualize, analyze, and interpret historical facts is admissible." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 546 F. Supp. 3d 666, 678 (S.D. Ohio 2021). Here, Barefoot's report largely consists of a summarization of Broyles's medical records. (*See* D.N. 61, PageID.321–22) The report's recitation that Broyles "sustained facial lacerations, [as] well as a fracture to her maxillary bone on the right that resulted in dental trauma" or that she "underwent chiropractic treatment" due to "musculoskeletal complaints" (*see id.*) is merely "[i]nformation presented without any expert analysis." *See Chapman,* 2023 WL 2745161, at *6. And because Barefoot offers only a conclusory statement that Broyles's treatment was necessary and appropriate, his proposed testimony does nothing to meaningfully "contextualize, analyze, and interpret" this

8

historical information. *See In re Davol, Inc*, 546 F. Supp. 3d at 678. As a result, Broyles's medical history "should come to the jury directly from the sources rather than through the mouth of" Barefoot. *See Chapman,* 2023 WL 2745161, at *6.

Finally, the Court notes that Barefoot's report repeatedly states that he has not evaluated Broyles and that he is unaware of the full extent of her injuries and treatment. (*See* D.N. 61, PageID.321 ("Not having evaluated Shawna, it appears that she did sustain[] significant dental trauma . . . . I am not certain of further dental treatment she may have received due to the traumatic teeth injuries that occurred during the motor vehicle accident."); *id.* ("Additionally, the record notes she had facial lacerations. Not having evaluated her, I am not certain of the extent of scarring[,] if any, which may have occurred.")) Given that Broyles intends to rely on Barefoot's testimony to show that "all of the medical care and medical bills [she] incurred . . . were reasonable, necessary, and appropriate for the injuries sustained," these admissions are significant. (*See id.*, PageID.317) After all, as noted above, an expert's opinion "must be supported by more than subjective belief" and speculation. *See Endless River Techs*, 2025 WL 233659, at *7. Barefoot's admitted lack of knowledge regarding the full extent of Broyles's injuries and treatment therefore makes it impossible for him to reliably testify in the manner Broyles intends.

In sum, Broyles has failed to demonstrate that Barefoot's testimony satisfies Federal Rule of Evidence 702. *See In re Onglyza*, 93 F.4th at 345; *see also* Fed. R. Evid. 702. As a result, the Court will grant Defendants' motion to exclude.

**B.    Summary Judgment**

Summary judgment is appropriate when a movant shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if a reasonable factfinder

9

could resolve the dispute in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to survive summary judgment, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient"; there must be "evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Moreover,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, . . . interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A). When considering whether to grant summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

Under Kentucky law, negligence is defined as "the failure to discharge a legal duty, whereby injury occurs." *Doe v. Dordoni*, No. 1:16-CV-74-DJH-HBB, 2021 WL 6144794, at *2 (W.D. Ky. Sept. 28, 2021) (quoting *Warren v. Winkle*, 400 S.W.3d 755, 758 (Ky. Ct. App. 2013)). "In any negligence action under Kentucky law, a plaintiff must prove the existence of a duty, breach thereof, causation, and damages . . . ." *Id.* (quoting *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009)). Importantly, "Kentucky tort law utilizes a pure comparative fault scheme, in which the relative fault is apportioned by the jury among the parties in proportion to their respective negligence." *Baum v. New*, No. 118-CV-00084-GNS-HBB, 2019 WL 13212622, at *1 (W.D. Ky. Nov. 25, 2019) (citing Ky. Rev. Stat. § 411.182; *Hilen v. Hays*, 673 S.W.2d 713, 719 (Ky. 1984)).

Defendants argue that summary judgment is warranted here because Plaintiffs "cannot satisfy their burden of proof that either Defendant Kurbonov or Defendant BSL breached any duty owed to the Plaintiffs." (D.N. 66-1, PageID.352) Specifically, Defendants note that "Broyles has

10

no memory of the collision" and that "Bradley also cannot recall critical details of the collision, such as the degree to which Kurbonov had entered the intersection prior to impact." (*Id.*) Defendants also point out that "[n]either Bradley nor Broyles proffered any expert proof on liability" while Defendants "have proffered significant probative evidence" such as Vomhof and Kirk's expert reports. (*Id.*) Finally, Defendants contend that pursuant to *Scott v. Harris*, 550 U.S. 372 (2007), "the dash camera and light-timing sequence are sufficient to show the objective facts of this case, and no reasonable jury could believe [Plaintiffs'] testimony in the face of this proof." (D.N. 66-1, PageID.353)

These arguments fail. In the negligence context, "questions of breach and injury are [generally] issues of fact best left to the jury." *Baum*, 2019 WL 13212622, at *1 (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003)). Indeed, "[w]eighing . . . arguments [regarding liability] and allocating fault . . . [are] quintessentially the function[s] of the jury, not the Court." *See id.* ("Summary judgment is rarely appropriate in controversies governed by a negligence standard because the facts and circumstances of each case determine the degree of care by which the defendant's conduct is to be measured." (citing *Ashby v. Hustler Magazine, Inc.*, 802 F.2d 856, 858 (6th Cir. 1986))). Here, in essence, Defendants ask the Court "to inject itself into Kentucky's comparative liability scheme by apportioning all fault to [Plaintiffs] as a matter of law." *See id.* But such a course is not proper given that Plaintiffs have produced considerable evidence of Defendants' potential liability. For example, Bradley testified that she had a green light and was not responsible for the accident. (*See* D.N. 70-1, PageID.786) And although Broyles does not remember the accident, she testified that Bradley's story has remained consistent and that she believes Bradley is telling the truth. (D.N. 71-1, PageID.912) Bradley's account of the accident is supported by Officer Taylor's accident report and testimony. (*See* D.N. 66-7, PageID.396–400;

11

*see also* D.N. 82-3, PageID.1263–70)  In addition, Plaintiffs have introduced evidence that Kurbonov had been on duty for more than thirteen hours and was on a phone call at the time of the accident.  (D.N. 69-1, PageID.445–50, 484–85; D.N. 82-1, PageID.1164–67)  This evidence must be viewed in the light most favorable to Plaintiffs, *see Loyd,* 766 F.3d at 588, and is sufficient to create a jury question regarding Defendants' liability.  *See, e.g.*, *Baum*, 2019 WL 13212622, at *1–2 (denying defendant's motion for summary judgment based on factual disputes regarding liability for an automobile accident).

Plaintiffs' decision not to rely on expert testimony as to liability does not change this analysis.  Although Kentucky law "generally requires expert testimony as to the standard of care and causation elements in negligence cases, that requirement is only applicable if the negligence is not 'so apparent that a layperson would recognize it.'"  *Leveline v. Schindler Elevator Corp.*, 630 F. Supp. 3d 874, 877 (E.D. Ky. 2022) (quoting *Eberhardt v. United States*, No. 3:15-CV-63, 2017 WL 653273, at *6 (W.D. Ky. Feb. 16, 2017)).  In other words, "[o]rdinary negligence cases . . . can be established without expert testimony" under Kentucky law.  *Chamis v. Ashland Hosp. Corp.*, 532 S.W.3d 652, 656 (Ky. Ct. App. 2017) (citing *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 375 (Ky. 2014)); *see also McGuffey v. Hamilton*, No. 2018-CA-001644-MR, 2020 WL 5268044, at *5 (Ky. Ct. App. Sept. 4, 2020) (explaining that "expert witnesses are generally not required in non-professional negligence cases" under Kentucky law).  Here, Defendants note that Plaintiffs have not provided expert evidence as to Defendants' liability for the accident.  (*See* D.N. 66-1, PageID.352 ("Neither Bradley nor Broyles proffered any expert proof on liability.  On the other hand, Defendants have proffered significant probative evidence against any claim of liability against these Defendants through . . . expert proof[.]"))  But Defendants have not cited, and the Court is not aware of, any authority suggesting that Plaintiffs are required to produce expert

12

evidence on liability in this routine negligence case arising from an automobile accident. *Cf. Kenton Cnty. Pub. Parks Corp. v. Modlin*, 901 S.W.2d 876, 881 (Ky. Ct. App. 1995) (explaining that cases involving "garden-variety negligence . . . . require[] nothing more than ordinary testimony from ordinary people") (internal quotation omitted). As discussed above, Plaintiffs have produced sufficient evidence of Defendants' potential liability to defeat summary judgment, and Plaintiffs' decision to not present expert evidence is irrelevant. *See Chamis*, 532 S.W.3d at 656; *see also Baum*, 2019 WL 13212622, at *1–2 ("Weighing these arguments and allocating fault [for an automobile accident] is quintessentially the function of the jury, not the Court.").

Of course, the Court will not accept a litigant's version of events that "is blatantly contradicted by the record, such that no reasonable jury could believe it." *Scott*, 550 U.S. at 380. Here, Kurbonov's dash camera video indicates that he had a green light before turning left. (*See* D.N. 67) But due to a smudge on Kurbonov's windshield, the video does not clearly demonstrate that Kurbonov had a green arrow. (*Id.*) In fact, Kurbonov, Taylor, Bradley, and Broyles each testified that the video is not clear on this point. (*See* D.N. 69-1, PageID.497–98; D.N. 82-3, PageID.1265–68; D.N. 70-1, PageID.787; D.N. 71-1, PageID.913) Thus, contrary to Defendants' argument, Kurbonov's dash camera video does not "blatantly contradict[]" Plaintiffs' account of the accident such that "no reasonable jury could believe it." *See Scott*, 550 U.S. at 380. And because the Sixth Circuit "has long held the view that '[t]he weight and credibility of the testimony of [a party's] expert witnesses [are] for the jury,'" *United States v. Persaud*, 866 F.3d 371 (6th Cir. 2017) (quoting *O'Donnell v. Geneva Metal Wheel Co.*, 183 F.2d 733, 737 (6th Cir. 1950)), neither does Defendants' expert evidence on the "light-timing sequence" of Kurbonov's traffic light. (*See* D.N. 66-1, PageID.353)

In sum, genuine factual disputes exist regarding Defendants' liability for the accident, and the Court will therefore deny Defendants' motion for summary judgment. *See* Fed. R. Civ. P. 56(a); *Anderson,* 477 U.S. at 248.

### III. CONCLUSION

For the reasons set out above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants' motion for summary judgment (D.N. 66) is **DENIED**.

(2) Defendants' motion to exclude the opinion of Dr. Jules Barefoot (D.N. 77) is **GRANTED**.

(3) The Court requests that U.S. Magistrate Judge Regina S. Edwards (D.N. 10) set a final litigation schedule, to include a settlement conference.

August 15, 2025

**David J. Hale, Judge**
**United States District Court**